DECISION ON OBJECTION TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, King David Kynard, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for permanent total disability ("PTD") compensation and to enter an order granting[1] said compensation. In the alternative, relator requests a writ of mandamus that orders the commission to vacate its order denying PTD compensation and to conduct further proceedings in this cause.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission's independent analysis of the non-medical factors complied withState ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203. The magistrate recommended that this court deny the requested writ of mandamus. Relator has filed an objection to the magistrate's decision. By his objection, relator contends that the magistrate erred in concluding that the commission's independent analysis of relator's non-medical factors complied with Noll and was supported by some evidence. The matter is now before this court for a full, independent review.
 {¶ 3} Upon our independent review of the record, as well as our examination of the magistrate's decision, we overrule relator's objection to the magistrate's decision, which simply reargues issues considered and addressed by the magistrate. We find that the magistrate has properly discerned the pertinent facts and applied the relevant law to those facts. Pursuant to Civ.R. 53(E)(4)(b), we adopt the magistrate's findings of fact and conclusions of law. In accordance with the magistrate's decision, we hereby deny the requested writ of mandamus.
Objection overruled; writ denied.
Bowman and Klatt, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. King David Kynard, : Relator, : v. : No. 03AP-1071 Industrial Commission of Ohio : (REGULAR CALENDAR) and Unitcast, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on June 11, 2004 Gallon Takacs Co., L.P.A., Theodore A. Bowman and MarthaWilson-Burres, for relator.
Jim Petro, Attorney General, and Paul H. Tonks, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 4} In this original action, relator, King David Kynard, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for permanent total disability ("PTD") compensation, and to enter an order denying said compensation.
 {¶ 5} Findings of Fact:
 {¶ 6} 1. Relator has two industrial claims that arose out of his employment as a machine molder for respondent Unitcast, Inc., a state-fund employer. Industrial claim number 94-10396 is allowed for: "fracture left metatarsals; crushing injury left foot." Industrial claim number 97-430997 is allowed for: "pneumoconiosis; interstitial lung disease and severe dyspnea."
 {¶ 7} 2. On December 12, 2000, relator filed an application for PTD compensation. In support, relator submitted a report, dated October 20, 2000, from Oscar Neufeld, M.D., stating:
As you well know Mr. Kynard worked at the Unitcast foundry for 30 years pouring molds into castings and cleaning the molds and metal plates. In the process of doing this work he was exposed to silica, asbestos and other toxic products found in the foundry.
CT Scan showed chronic prominent interstitial lung markings. Pulmonary Function Studies showed diffusion defect which represents inadequate exchange of oxygen and carbon dioxide. This leads to pulmonary hypertension and disability.
In my opinion, he is totally disabled and unable to engage in sustained employment and unable to return to his position of pouring molds and cleaning the molds and metal plates, the cause of his illness.
 {¶ 8} 3. In his PTD application, relator indicated that he graduated from high school in 1956. The PTD application also posed three questions to the applicant: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given a choice of "yes," "no," and "not well," relator selected the "yes" response to all three queries.
 {¶ 9} 4. The PTD application also seeks information regarding the claimant's work history. Relator indicated that he had been employed as a "machine operator" at a foundry from June 1965 to April 1995, a period of almost 30 years.
 {¶ 10} 5. On the PTD application, relator described the duties of his job as a machine operator: "ran core machine, bench machine, filled mold with sand and put in oven, also CO2 machine — shell core maker."
 {¶ 11} 6. On May 22, 2001, relator was examined by commission specialist, David M. Atwell, M.D. Dr. Atwell examined relator only for the allowed pulmonary conditions of industrial claim 97-430997. Dr. Atwell wrote:
1. The claimant appears to have reached maximum medical improvement. The disease does not appear to be progressive at this time.
2. Based on the AMA Guides to the Evaluation of PermanentImpairment, 4th Edition, page 162, table 8, he has 11% impairment of the whole person.
3. The physical strength rating is enclosed. He stated that he can't work. Based on his pulmonary function studies, he should be able to do at least sedentary work, if not more. A pulmonary stress test would objectively quantify his work capacity.
 {¶ 12} 7. On the physical strength rating form, Dr. Atwell placed a mark indicating that relator is medically able to perform sedentary work. Dr. Atwell wrote "at least" following "sedentary work."
 {¶ 13} 8. On May 23, 2001, relator was examined by commission specialist Harvey A. Popovich, M.D. Dr. Popovich examined only for the allowed left foot conditions in claim number 94-10396. Dr. Popovich wrote:
Discussion
Current physical examination reveals mild swelling and tenderness of the dorsal aspect of the left foot. There is reduction in interphalangeal joint flexion of the great toe, but range of motion of the first, second and third digits is otherwise normal. There are no abnormal findings with respect to the left ankle. Mr. Kynard returned to work without restriction six months following his injury and his activities of daily living including work are not limited by the allowed conditions pertaining to his left foot.
Opinion
It is my medical opinion that Mr. Kynard has reached maximum medical improvement.
I have used the AMA Guides to the Evaluation of PermanentImpairment, 4th edition, in the estimation of impairment.
Fracture left metatarsals; crushing injury left foot — 1% whole person permanent partial impairment. (Page 78. Table 45[.])
* * *
Mr. Kynard can return to his former position of employment as he describes it based only on limitations due to the allowed conditions.
Mr. Kynard is capable of sustained remunerative activity within the limits indicated on the Physical Strength Rating form when considering only the allowed claim conditions.
 {¶ 14} 9. On the physical strength rating form, Dr. Popovich indicated that relator can perform "medium work."
 {¶ 15} 10. In further support of his PTD application, relator submitted a vocational report ("the Kahler report") authored by Teresa J. Kahler, Ph.D., as "Supervising Psychologist," and Barbara Gearhart, as the vocational specialist. The Kahler report indicates that relator was given the Career Ability Placement Survey and that the following scores were obtained:
 Mechanical Reasoning 2nd percentile Spatial Relations 8th percentile Verbal Reasoning 2nd percentile Numerical Ability 2nd percentile Language Usage 2nd percentile Word Knowledge 2nd percentile Perceptual Speed and Accuracy 2nd percentile Manual Speed and Dexterity 2nd percentile
The above scores were explained in the Kahler report as follows:
Mr. Kynard scored well below average in all areas tested. Despite the fact that he completed high school, he was unable to accurately add and subtract in the subtest measuring arithmetic ability. On the subtest measuring Manual Speed and Dexterity, he worked very slowly. He does not appear to have competitive speeds for a job requiring fast and accurate use of his hands.
 {¶ 16} Following brief summaries of the medical reports of Drs. Atwell, Popovich, and Neufeld, the Kahler report further states:
Mr. Kynard retired after 30 years of work in a steel foundry. It was after his retirement that his lung disease was diagnosed and attributed to his years of exposure to pollutants in the foundry. His work there is classified by the Dictionary of Occupational Titles (DOT) as Heavy Work, which is work requiring the exertion of 50 to 100 pounds of force occasionally. This physical capacity level exceeds limits placed on him by the physicians quoted above. He is not able to return to the work environment he knew for 30 years, nor does he have any transferable skills from this occupation.
His only other work experience goes back almost 40 years when he worked as a kitchen helper at a hospital cafeteria. While this is classified as Medium Work by the DOT, exposure to heat, fumes and smoke could aggravate his lung disease. Furthermore, with his compromised lung capacity, it is doubtful that he would be able to maintain the pace required to keep a kitchen operation moving during dining periods. He is unable to maintain any physical activity for even the shortest period of time without experiencing shortness of breath and the need to sit down and rest. His need to self-pace would interfere with productivity on any job. The ability to do any sort of sedentary activity is questionable based on the test results of his manual speed and dexterity. He does not appear to be able to even develop a competitive pace, let alone maintain it over a period of time.
This is a 62-year-old gentleman who has not worked since April 1995 when the Unitcast plant closed and he retired. In 1997 he was diagnosed with a debilitating lung disease stemming from his 30-year exposure to silica sand and fumes in the steel foundry. He does not appear to have any marketable job skills, nor does he appear to have the potential for retraining based on his test scores today. He is a poor candidate for return to employment.
 {¶ 17} 11. The commission requested an employability assessment report from Paula W. Breslin, a vocational expert. The Breslin report, dated July 14, 2001, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or (B) following appropriate academic remediation, or brief skill training.
 {¶ 18} Indicating acceptance of Dr. Popovich's reports and responding to the above query, Ms. Breslin lists the following employment options: "Machine Molder; Assembler; Cashier; Packager, Machine; Service Station Attendant."
 {¶ 19} Indicating acceptance of Dr. Atwell's reports and responding to the above query, Ms. Breslin lists the following employment options: "a) Assembler; Document Preparer, Microfilming; Election Clerk; Escort Vehicle Driver; Order Clerk Food and Beverage. b) Registration Clerk; Billing Clerk; Scheduler; Rater; Assembler, Semi-Conductor."
 {¶ 20} Under "III. Effects of Other Employability Factors," Ms. Breslin wrote:
1. Question: How, if at all, do the claimant's age, education, work history or other factor[s] (physical, psychological and sociological) affect his/her ability to meet basic demands of entry level occupations?
Answer: Age: Age of 62, closely approaching advanced age may negatively impact ability to adjust to new work duties and environments. He is only 2 years from customary retirement age.
Education: High school education is sufficient for many unskilled, entry level job requirements.
Work History: History is constricted, he has performed one job for 30 years. This could also negatively impact his ability to adapt to new environments and job requirements.
* * *
2. Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
Answer: There is no indication in the background data that the claimant would be incapable of participating in academic or skills training. He has exhibited the ability to do semi-skilled work. He is 62 years old which could negatively impact ability to adjust to new work requirements and environments, especially since he has only worked in one environment.
3. Question: Are there significant issues regarding potential employability limitations or strengths which you wish to call to the SHO's attention?
Answer: Limitations include age of 62, constricted work history and no work experience since 1995.
Vocational assets include the consistency of his 30 year work history as a machine molder and a high school education. He has also demonstrated the ability to do semi-skilled work.
The Breslin report further states:
* * * WORK HISTORY:
Job Title * * * Skill Level Strength Level Dates
 Machine * * * Semi-skilled Medium 06/03/65-04/95 Molder
* * * EDUCATIONAL HISTORY:
 Highest grade completed: 12th grade Date of last attendance: 1956 H.S. graduate: Yes GED: n/a Vocational training: welding training ICO Educational Classification: High school education or above
 {¶ 21} 12. Following a September 6, 2001 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO relied upon the medical report of a Dr. Orfahli and the Breslin vocational report. On October 4, 2001, relator moved the commission for reconsideration of the SHO's order of September 6, 2001.
 {¶ 22} 13. Following an April 30, 2002 hearing before two members of the three-member commission, the commission issued an order stating that reconsideration was granted and that the SHO's order of September 6, 2001, was vacated on grounds that it contains a clear mistake of law. The commission found that the SHO could not rely upon Dr. Orfahli's report because it cannot be ascertained whether Dr. Orfahli was aware of the allowed conditions in the claim.
 {¶ 23} In its April 30, 2002 order granting reconsideration and vacating the SHO's order, the commission denied the PTD application, explaining:
There is no evidence or allegation that the injured worker is permanently and totally disabled related to the allowed conditions in claim no. 94-10396. Claim no. 94-10396 represents a 05/25/1994 injury recognized for "fracture left metatarsals; crushing injury left foot." The injured worker underwent a surgical procedure involving reduction/internal fixation to the left foot, and after approximately six months of recovery returned to his former position of employment. The injured worker then worked in his former position of employment until the plant closed on 04/07/1995. The injured worker's unemployment as of 04/07/1995 was totally unrelated to his left foot injury, and for that matter, also to the pulmonary condition.
On 05/23/2001, Dr. Popovich examined the injured worker for the left foot injury. Dr. Popovich found that the injured worker had a 1% permanent partial impairment and that the injured worker was capable of performing his previous employment. Based on Dr. Popovich's report, the left foot injury is found not to prevent the injured worker from returning to his former position of employment and the injured worker is found not to be permanently and totally disabled related to this injury.
Claim no. 97-430997 is recognized for "pneumoconiosis; interstitial lung disease and severe dyspnea."
On 05/22/2001, Dr. David A. Atwell examined the injured worker for the allowed pulmonary conditions. Dr. Atwell concluded that the injured worker is capable of at least sedentary work, if not more. Based on Dr. Atwell's report, the injured worker is found capable of at least sedentary work as a result of the conditions recognized under claim no. 97-430977.
The injured worker is currently 63 years of age. He has a high school education and he indicated that he can read, write, and perform basic math. The injured worker worked as a machine operator with the employer of record for approximately 30 years until 04/07/1995 when the plant was closed. The injured worker also has had some specialized training in welding.
Based on Dr. Atwell's report, it is concluded that the injured worker can not return to his former employment. The injured worker is 63 years of age, but this factor alone would not prevent him from returning to work. He also has a high school education. He indicated on his application that he can read, write, and perform basic math. Someone with these basic skills should be capable of sedentary work. The injured worker still drives. It is noted that he was able to travel from Toledo to Columbus on 04/30/2002 without apparent difficulty. Further he entered the hearing room, attended the hearing and exiled the hearing room without any apparent difficulty.
There is no evidence that the injured worker has made any attempt to return to work or participate in any vocational rehabilitation program in order to re-enter the workforce. If the injured worker made a good faith effort to return to work within his physical capabilities, his vocational factors are such that he would be able to do so.
Paula Breslin prepared an employability assessment report for the Industrial Commission on 07/14/2001. She found that accepting the report of Dr. Atwell, the injured worker retained the capacity to work in various occupations. Based on an independent analysis, the Commission finds that Ms. Breslin's conclusions are reasonable.
The injured worker submitted a vocational capacities evaluation dated 07/06/2001, but this report is not found credible. First, accurate test results evaluating capabilities are dependent on a good faith effort by the test taker. The injured worker already indicated that he could read, write and perform basic math. Therefore, the poor tests report in the vocational report are found suspect. In addition, there is no indication in the report how a minimal effort in the test could be measured.
Dr. Orfahli's report was found unreliable only because of the possibility that he had not considered the proper allowances in the claim. However, Dr. Orfahli's observations concerning the injured worker still have merit. Specifically, Dr. Orfahli noted that the injured worker stated he had quit smoking, yet his clothes still smelled of smoke. He also noted that in a pulmonary function test done on 10/29/1997 that the injured worker's effort was inconsistent and submaximal.
There is evidence undermining the injured worker's credibility. The injured worker's poor test results can not be explained, unless he made a poor effort, which does appear consistent with past behavior.
It is further noted that the 07/06/2001 vocational report contains no actual analysis of the injured worker's occupation. The injured worker, himself, notes that his job required completing inventory sheets and that it took 3 to 4 months to learn the job. The job appears to have required some intellectual capability. The lack of analysis regarding the previous employment also makes the vocational report of 07/06/2001 unreliable.
 {¶ 24} 14. On October 27, 2003, relator, King David Kynard, filed this mandamus action.
 {¶ 25} Conclusions of Law:
 {¶ 26} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 27} For its threshold medical determination, the commission relied upon the reports of Drs. Atwell and Popovich. Based upon those reports, the commission concluded that relator is medically able to perform sedentary work. Here, relator does not challenge the commission's determination that his residual medical capacity is sedentary work. However, relator does challenge the commission's analysis of the nonmedical factors.
 {¶ 28} In his brief filed in this action, relator asserts that State ex rel. Ranomer v. Indus. Comm. (1994),71 Ohio St.3d 134, compels this court to issue a writ of mandamus. The magistrate disagrees. Accordingly, an analysis of Ranomer is in order here.
 {¶ 29} In Ranomer, the Supreme Court of Ohio not only determined that the commission's order denying Mr. Ranomer's PTD application violated State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, it also issued a full writ of mandamus in accordance with State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. The Ranomer court stated:
* * * Pursuant to State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315, * * * and its progeny, a court considering a complaint for a writ of mandamus alleging abuse of discretion by the Industrial Commission in denying a motion for permanent total disability must engage in a multi-step analysis. That court must first review the form of the commission's order and determine whether the order satisfies the requirements of State ex rel.Noll v. Indus. Comm., supra, by (1) specifying the evidence upon which the commission relied, and (2) explaining the reasoning the commission used to reach its decision in such a manner as to enable meaningful judicial review. Gay, supra, at 319-320 * * *.
The issuance of a writ of mandamus is appropriate where the court finds non-compliance with Noll, as such non-compliance is equivalent to an abuse of discretion. However, the nature of the mandate in the writ is dependent upon further analysis. Where the record before the court shows a substantial likelihood that the claimant is permanently and totally disabled, the court may order the commission to forthwith make an award of permanent total disability compensation. Gay, supra, syllabus. In the absence of substantial likelihood of permanent and total disability, or in cases where nonmedical factors are split between favorable and non-favorable considerations, the court may order the commission to further consider the claimant's motion. In this latter category of cases, the court should issue a writ ordering the commission to issue a decision meeting the specificity requirements of Noll, regardless of whether the commission ultimately grants or denies permanent total disability compensation. * * *
Id. at 137.
 {¶ 30} In his brief filed in this action, relator asserts:
* * * [T]he Court [in Ranomer] has stated that "in cases where non-medical factors are split between favorable and nonfavorable considerations, the court may order the commission to further consider the claimant's motion" and that "the court should issue a writ ordering the commission to issue a decision meeting the specificity requirements of Noll." Id. In other words, Ranomer indicates that where a case turns on vocational evidence, and such evidence shows the nonmedical factors are split between favorable and unfavorable considerations, it is appropriate for the Court to remand the case to the Commission to explain why the favorable considerations outweigh the unfavorable.
Here, the Commission relied specifically on the Breslin report, which plainly identified a number of non-medical factors which would negatively impact Relator's potential for re-employment.
* * *
Here, the vocational expert relied upon by the IC concluded that non-medical factors that might hinder Relator's ability to perform sustained remunerative employment are his age, his 30-year singular work history. The Commission's order fails to explain why, in light of such negative factors, it still concludes that Relator, at the age of 63, is capable of re-entering the work force in occupational fields wholly dissimilar to his past work. Simply put, it is clear that the "non-medical factors are split between favorable and non-favorable considerations" in this case. The Commission failed to explain the reasoning used to reach its decision that Relator is capable of returning to work in a sedentary position despite his advanced age, his singular work history, his lack of transferrable [sic] skills, and the fact that he has never worked in a sedentary position.
Id. at 5-7.
 {¶ 31} In the magistrate's view, the Ranomer court did not pronounce as relator seems to suggest here. To begin, Ranomer
does not compel a reviewing court to remand a commission decision for further explanation simply because there are favorable and unfavorable nonmedical factors involved. Only if the reviewing court finds a violation of Noll must it then order a remand to the commission for further explanation if there is a split between favorable and unfavorable medical factors.
 {¶ 32} Secondly, Ranomer does not stand for the proposition, as relator seems to suggest here, that the commission is obligated to specifically address all of the so-called negative factors that might be contained in the report of a vocational expert even if the commission relies upon that report.
 {¶ 33} Here, the commission's order notes the Breslin report and then states: "Based on an independent analysis, the Commission finds that Ms. Breslin's conclusions are reasonable."
 {¶ 34} Notwithstanding the commission's statement in its order that it conducted an independent analysis of the nonmedical factors, relator repeatedly asserts that the commission relied upon the Breslin report to reach its determination to deny PTD compensation. Relator's assertion is not accurate. The commission's order makes it clear that the commission agrees with Ms. Breslin's conclusions that relator can perform sustained remunerative employment based upon its own independent analysis of the nonmedical factors.
 {¶ 35} The commission is the expert on the nonmedical or vocational evidence. State ex rel. Jackson v. Indus. Comm.
(1997), 79 Ohio St.3d 266, 271. Accordingly, it is not critical or even necessary for the commission to rely upon vocational reports of record. Id.
 {¶ 36} Here, while the commission found that Ms. Breslin's conclusions were reasonable, the commission conducted its own analysis of the nonmedical factors. Accordingly, the commission was not required to address every so-called negative factor that might be contained in the Breslin report.
 {¶ 37} The question here is whether the commission's own independent analysis complies with Noll. The magistrate finds that it does.
 {¶ 38} The commission's order states: "The injured worker is 63 years of age, but this factor alone would not prevent him from returning to work." Thus, the commission seems to recognize that relator's age of 63 years is not a positive factor for reemployment but that age alone does not render a claimant PTD. As the Supreme Court of Ohio stated in State ex rel. Moss v.Indus. Comm. (1996), 75 Ohio St.3d 414, 417, "there is not an age — ever — at which reemployment is held to be a virtual impossibility as a matter of law." Parenthetically, it should be noted that the PTD claimant in Moss was 78 years old. The commission's order here simply recognizes what the Moss court tells us about the impact of age in a PTD determination.
 {¶ 39} The commission placed great emphasis on relator's high school education and his self-evaluation on his PTD application that he can read, write, and do basic math. The commission concluded that "[s]omeone with these basic skills should be capable of sedentary work." The commission also notes that relator still drives and that he was able to drive himself from Toledo to the hearing at Columbus, Ohio.
 {¶ 40} Clearly, it was within the commission's discretion to conclude that relator's high school education, along with his admitted basic abilities to read, write, and perform basic math, should permit him to perform sedentary employment. See State exrel. Ellis v. McGraw Edison Co. (1993), 66 Ohio St.3d 92; Stateex rel. Murray v. Mosler Safe Co. (1993), 67 Ohio St.3d 330;State ex rel. West v. Indus. Comm. (1996), 74 Ohio St.3d 354.
 {¶ 41} Moreover, the commission properly noted relator's ability to drive from Toledo to Columbus because an ability to drive has an obvious impact on a claimant's ability to get to and from a place of employment.
 {¶ 42} While the commission's own independent analysis can perhaps be said to be brief, brevity in itself does not necessarily detract from compliance with Noll, supra. Here, the commission explained the factors that it found would permit relator to obtain sedentary employment. The commission was not required to say anything more than it did in its order.
 {¶ 43} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE
[1] We note that in the first paragraph of the magistrate's decision the word "denying" was mistakenly used instead of the word "granting." This typographical error is inconsequential to the disposition of this case.